IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GUY P. RIORDAN, FRANCES O. RIORDAN,**
**BILL BOWEN, and STEVE JACKSON,**

      **Plaintiffs,**

vs.                                                                                            No. CIV 04-0070 RB/WDS

**LAWYERS TITLE INSURANCE CORPORATION,**
a Virginia Corporation,

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's Motion for Summary Judgment (Doc. 31), filed on September 28, 2004. Jurisdiction is founded upon 28 U.S.C. § 1332. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, I find that this motion should be granted.

**I.  Background.**

Plaintiffs were owners of 160 acres of real property (hereinafter "Property") located in an "in-holding"[1] in the middle of the Sandia Mountain Wilderness of the Cibola National Forest near Albuquerque, New Mexico. Defendant issued an insurance policy (hereinafter "Policy") insuring Plaintiffs' title to the Property. Plaintiffs allege that they sustained a loss, covered by the Policy, as a result of lawsuit that they filed against the United States of America to declare a vehicular right of way to the Property. *See Riordan, et al. v. United States, et al.*, CIV 01-0092 DJS/WWD (hereinafter "Primary Action").

---

[1] In-holdings are lands surrounded by federally owned lands. *See* 16 U.S.C. § 3210(a).

On December 24, 2003, Plaintiffs filed their Complaint in state court. On January 26, 2004, Defendant removed the matter to this court. In their Second Amended Complaint, filed on April 29, 2004, Plaintiffs allege (1) breach of insurance contract; (2) violation of the New Mexico Unfair Practices Act; (3) violation of the New Mexico Insurance Trade Practices and Frauds Act; (4) insurance bad faith; and (5) punitive damages. Defendant has moved for summary judgment on all claims.

**II. Facts.**

At all relevant times, the Property has been accessed by the Piedra Lisa Trail, which is a hiking and horse trail maintained by the United States Forest Service ("USFS"). The Property is located two and a half miles from the nearest paved road. The Piedra Lisa Trail was and is unsuitable for vehicular access. Mr. Riordan testified at his deposition that, at the time he pruchased the Property in 1995, there were several former roads that had been used to access the Property, including roads that were accessible by jeep. Before Plaintiffs purchased the Property, the prior owner represented that he had accessed the Property by jeep over an access route other than the Piedra Lisa Trail. Mr. Riordan testified that a USFS employee informed Mr. Riordan that the Property had vehicular access and suggested the access route was near the original homestead on the Property.

On May 5, 1995, Riordan signed a Vacant-Land Purchase Agreement to purchase the property for $225,000. Prior to closing, Riordan visited the Property by walking and riding his horse on the Piedra Lisa Trail. Plaintiffs closed on the Property on July 6, 1995.

Defendant issued the owner's policy of title insurance, effective September 11, 1995. The Policy provides in pertinent part:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION . . .. Insures . . . against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
> 2. Any defect and /or lien or encumbrance on the title;
> 3. Unmarketability of the title;
> 4. Lack of a right of access to and from the land.

(Def. Ex. F.)

The Policy contains the following exclusion from coverage:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>
> 1(a) Any law, ordinance or government regulation . . . restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land . . .

(Def. Ex. F.)

The Plaintiffs brought the Primary Action to declare a vehicular right of way to the Property. The United States raised affirmative defenses in the primary action, but did not assert counterclaims against Plaintiffs. Defendant hired attorney Joseph Werntz to represent Plaintiffs in the Primary Action. In September 2002, the property appraised for $2.8 million. Thereafter, Plaintiffs sold the property to Sandia Pueblo for $1.3 million and a tax deduction for a $1.5 million charitable donation to the Pueblo. The Primary Action was dismissed as moot by stipulation on December 18, 2002. Plaintiffs made three demands for payment under the policy. The demands were rejected.

3

**III. Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

**IV. Discussion.**

    **A.  Whether there is coverage under the Policy.**

Plaintiffs assert that the Policy insured against a lack of vehicular access to the Property. Defendant argues that the Policy covers a lack of a right of access, and does not insure the quality

of that access. Title insurance in New Mexico is "totally regulated by the state to provide for the protection of consumers and purchasers of title insurance policies." NMSA 1978, 59A-30-2 (2004). All title insurance policies are issued using uniform forms promulgated by the superintendent of insurance. *See* NMSA 1978, 59A-30-5 (2004).

The Policy insures against loss caused by a "lack of right of access." Plaintiffs argue that this language should be construed to cover a lack of vehicular access based on their reasonable expectations. "An insurance contract should be construed as a complete and harmonious instrument designed to accomplish a reasonable end." *Knowles v. United Services Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992). The doctrine of reasonable expectations only applies where the policy terms are ambiguous. *Slack v. Robinson*, 134 N.M. 6, 9, 71 P.3d 514, 517 (Ct. App. 2003). "Absent ambiguity, provisions of [an insurance] contract need only be applied, rather than construed or interpreted." *Richardson v. Farmers Ins. Co. of Ariz.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991). Clear and unambiguous contract terms must be enforced as written. *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989). The Policy insures against loss or damage sustained or incurred by the insured by reason of a lack of a right of access to and from the land. This language is clear and unambiguous. For this reason, the policy language controls and the doctrine of reasonable expectations is inapplicable.

Unambiguous insurance contracts must be construed in their usual and ordinary sense. *Western Commerce Bank v. Reliance Ins. Co.*, 105 N.M. 346, 348, 732 P.2d 873, 875 (1987). When the language in the policy is unambiguous, the New Mexico court "will not strain the words to encompass meanings they do not clearly express." *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 140-141, 921 P.2d 944, 947-948 (1996). The Policy insures against a lack of right of access; it does not

insure that the Property has vehicular or any other type of access.

Although no New Mexico cases have addressed this point, courts in other jurisdictions have found that coverage for a "lack of right of access" to the insured property is not triggered where access is merely impractical or difficult as long as the right to access exists. *See Magna Enterprises, Inc. v. Fidelity National Title Ins. Co.,* 127 Cal.Rptr.2d 681, 684-685 (Ct. App. 2002); *Gates v. Chicago Title Ins. Co.,* 813 S.W.2d 10, 11-12 (Mo. Ct. App. 1991); *Krause v. Title & Trust Co. of Florida,* 390 So.2d 805, 806 (Fla. Ct. App. 1980); *Title & Trust Co. of Florida v. Barrows*, 381 So.2d 1088, 1090 (Fla. Ct. App. 1979); *Mafetone v. Forest Manor Homes, Inc.,* 34 A.D.2d 566, 567 (N.Y.A.D. 1970). Plaintiffs admit that they had, and were never denied, a right to pedestrian access to and from the property over the Piedra Lisa Trail. Indeed, their right of access was mandated by federal law. *See* 16 U.S.C. § 3210(a). Accordingly, there was no lack of right of access to the property that would trigger coverage under the policy.

Plaintiffs rely on *Marriott Financial Services, Inc. v. Capitol Funds, Inc.*, 217 S.E.2d 551, 565 (1975) in support of their claim of coverage. In *Marriott,* the court construed "right of access" to mean "without unreasonable restriction" and stated in dicta that pedestrian access was unreasonable in that case. *Id.* This dicta in *Marriott* has been roundly criticized. *See Magna Enterprises,* 127 Cal.Rptr.2d at 684-685; *Gates,* 813 S.W.2d at 11-12; *Barrows*, 381 So.2d at 1090. Moreover, *Marriot* is inapposite to Plaintiffs' case. In *Marriott*, the subject property was adjacent to a heavily traveled city street in a commercial area. *Marriott*, 217 S.E.2d 565. The Property in this case is located in the middle of a wilderness area, two and a half miles from the nearest paved road. Thus, even if the *Marriott* dicta were applied to this case, pedestrian access to the Property was without unreasonable restriction.

Finally, the holding in *Marriott* does not support Plaintiffs' position. In *Marriott*, the court held that the claim was barred by the government action exclusion of the title insurance policy. The insured in that case was required to apply for a driveway permit with the city, but had never actually filed the application because of the city's stated intention not to approve the application if it were filed. *Marriott*, 217 S.E.2d at 565. The *Marriott* court held that because the insured had not applied, access had not been denied, and even if the application had been submitted and rejected, coverage would still be excluded under the government action exclusion. *Id*.

The Policy in the instant case contains a similar government action exclusion. The Policy excludes any claim that arises by reasons of "any law, ordinance or governmental regulation . . . restricting, regulating, prohibiting or relating to . . . the occupancy, use, or enjoyment of the land." (Def. Ex. F.) Plaintiffs complain that they were deprived of a right of access because the United States allegedly intended to reject any application for a special use authorization for vehicular access to the Property. However, Plaintiffs never applied for a special use permit, and they sold the property before obtaining a final determination in the Primary Action. Thus, *Marriott* does not support Plaintiffs' claim of coverage based on the government action exclusion.

Plaintiffs claim that the property was unmarketable is similarly unavailing. Defects in the physical condition of the property do not constitute unmarketability of title. *See Chicago Title Ins. Co. v. Investguard, Ltd.*, 449 S.E.2d 681, 683 (Ga. Ct. App. 1994); *Chicago Title Ins. Co. v. Kumar*, 506 N.E.2d 154, 156 (Ma. Ct. App. 1987); *Hocking v. Title Ins. & Trust Co.*, 37 Cal.2d 644, 652, 234 P.2d 625, 629 (1951). A difference exists between economic lack of marketability, which relates to physical conditions affecting the use of the property, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. *See Kumar*, 506 N.E.2d at

157. Here, Plaintiffs had a right of access to the property at all relevant times. The fact that Plaintiffs were able to sell the property at a substantial profit militates against a determination that the title was unmarketable. Under these circumstances, the title was marketable.

Plaintiffs did not suffer a loss covered by the policy. Defendant's denial of coverage was justified. The remaining claims fail because there was no coverage under the policy. *See Yumukoglu v. Provident Life & Acc. Ins. Co.,* 131 F.Supp.2d 1215, 1226 (D. N. M. 2001) (summary judgment appropriate when the insurer has a reasonable basis for its decision to deny benefits); *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992) (bad faith requires frivolous or unfounded refusal to pay); *Dellaira v. Farmers Ins. Exchange*, 136 N.M. 552, 558, 102 P.3d 111, 117 (Ct. App. 2004) (false or misleading statement essential element of Unfair Practices Act claim).

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31), filed on September 28, 2004, is **GRANTED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**